IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**UNITED STATES OF AMERICA**

v.                                             CRIMINAL NO. 2:06-0238

**ROBERT ANTHONY CASTAPHENY**

### MEMORANDUM OPINION AND ORDER
### ON MOTION TO SUPPRESS

On April 24, 2007, the defendant appeared in person and by counsel, Troy N. Giatras, and the government appeared by Assistant United States Attorney Monica L. Dillon for the purpose of a pretrial motions hearing on defendant's motions to suppress (Doc. Nos. 25, 46).  At the conclusion of the hearing, the court indicated that it would issue its ruling on the motions after further reviewing the evidence and briefs submitted by counsel. Having concluded its review, the court hereby **GRANTS** the motions to suppress for the reasons stated below.

### I.  Factual Background

From the testimony and other evidence taken at the suppression hearing in this matter, the court makes the following factual findings.  In the early morning of June 8, 2006, Sergeant James B. Frye and Sergeant Brian Michael Brown of the West Virginia State Police were investigating an alleged assault on a West Virginia State trooper.  Their investigation led them to

suspect that defendant Robert Castapheny might have been involved in the assault.  Having been informed that defendant was staying with his girlfriend, Tina Tolliver, at her residence in Logan, West Virginia, the troopers arrived there at approximately 5:00 a.m. on June 8, 2007.  The troopers, who were dressed in their State Police uniforms, parked their cruiser slightly uphill from the Tolliver residence, but within view of the house.  They then approached the front door and knocked, and the door was opened by a young woman later identified as Tina Tolliver.[1]

    At this point, Sgt. Frye and Sgt. Brown asked whether Robert Castapheny was in the house, and Tolliver responded something to the effect that Castapheny was "over there" or "right here," while pointing to another spot within the front room of the house, but not in view of the troopers from their position outside the front door.  Although Sgt. Brown testified that they then asked Tolliver if they could speak with Castapheny, Sgt. Frye's testimony did not corroborate that contention.  Importantly, both troopers admitted that they did not ask permission to enter the residence.  Rather, they took her answer and her act of pointing to defendant as implied consent to enter the house and speak with Castapheny.

---

[1] Tolliver, who was called as a witness for the defense, testified that the troopers opened the door and entered the house without knocking.  The court finds the troopers' testimony to be more credible on this point because of the consistency of their testimony and their demeanor on the stand.

Once inside, the troopers observed defendant seated in a chair nearby and asked him whether his name was Robert Castapheny.  He answered affirmatively and stood up, although it is unclear whether he did so independently or at the direction of Sgt. Frye.  Sgts. Frye and Brown testified that they then noticed a baggie of marijuana on the chair where he had been sitting, and a bulge in his pants pocket.  Sgt. Frye patted defendant down and discovered relatively large quantities of powder cocaine and crack cocaine, as well as $1,905.00 in cash.[2]  Defendant was then arrested and taken to the Logan detachment of the West Virginia State Police.

## II.  Analysis

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures.[3]  U.S. Const. amend. IV.  It is well settled that a warrantless search of a residence[4]

---

[2]  Much of the testimony and argument at the hearing centered around discrepancies between the troopers' testimony about the marijuana they observed on the chair and statements in subsequent police reports about marijuana taken from defendant's person.  Because the court grants the motions to suppress on the basis of the troopers' entry into the house, the court need not reach the issues raised by these discrepancies.

[3]  "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.

[4]  Pursuant to the United States Supreme Court's ruling in Minnesota v. Olson, 495 U.S. 91 (1990), an overnight guest has a reasonable expectation of privacy in his host's home.  The court

is presumed to be unreasonable, subject to only a few clearly established exceptions.  <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 219 (1973)(quoting <u>Katz v. United States</u>, 389 U.S. 347, 357 (1967)).  One such exception applies to searches conducted pursuant to the consent of an authorized person.  <u>Schneckloth</u>, 412 U.S. at 219.  Consent to search may be given not only by a defendant, but also by a third party with "common authority over or other sufficient relationship to the premises or effects sought to be inspected."  <u>United States v. Matlock</u>, 415 U.S. 164, 171 (1974).

"When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given."  <u>Bumper v. North Carolina</u>, 391 U.S. 543, 548 (1968).  Whether a consent to search was valid is a factual question to be resolved by considering the "totality of the circumstances."  <u>Schneckloth</u>, 412 U.S. at 227.  Not only must the government prove that the consent was freely and intelligently given, but also that it was "<u>unequivocal and specific</u>" and "uncontaminated by any duress or coercion, actual or implied."  <u>United States v. Morrow</u>, 731 F.2d 233, 235-36 (4th Cir. 1984)(emphasis added)(quoting <u>United States v. Vickers</u>, 387 F.2d 703, 706 (4th Cir. 1967)).  The government

---

finds defendant to have been an overnight guest in the Tolliver residence at the time of the search in question, and accordingly considers defendant's motions to suppress in light of <u>Olson</u>.

is presumed to be unreasonable, subject to only a few clearly established exceptions.  <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 219 (1973)(quoting <u>Katz v. United States</u>, 389 U.S. 347, 357 (1967)).  One such exception applies to searches conducted pursuant to the consent of an authorized person.  <u>Schneckloth</u>, 412 U.S. at 219.  Consent to search may be given not only by a defendant, but also by a third party with "common authority over or other sufficient relationship to the premises or effects sought to be inspected."  <u>United States v. Matlock</u>, 415 U.S. 164, 171 (1974).

"When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given."  <u>Bumper v. North Carolina</u>, 391 U.S. 543, 548 (1968).  Whether a consent to search was valid is a factual question to be resolved by considering the "totality of the circumstances."  <u>Schneckloth</u>, 412 U.S. at 227.  Not only must the government prove that the consent was freely and intelligently given, but also that it was "<u>unequivocal and specific</u>" and "uncontaminated by any duress or coercion, actual or implied."  <u>United States v. Morrow</u>, 731 F.2d 233, 235-36 (4th Cir. 1984)(emphasis added)(quoting <u>United States v. Vickers</u>, 387 F.2d 703, 706 (4th Cir. 1967)).  The government

---

finds defendant to have been an overnight guest in the Tolliver residence at the time of the search in question, and accordingly considers defendant's motions to suppress in light of <u>Olson</u>.

must meet this burden by a preponderance of the evidence. Matlock, 415 U.S. at 178.

Even accepting the testimony of the government's witnesses as to how the troopers gained entry into the Tolliver residence, the court can find no valid consent to their entry. As stated above, in response to the troopers' question whether Castapheny was in the home, Tolliver – while pointing to the defendant, who was out of view – replied that he was "right over there." This response can at best be described as ambiguous. It certainly does not constitute the "unequivocal and specific" consent necessary to overcome the presumption that the troopers' warrantless entry into the house violated the protections afforded by the Fourth Amendment.

To the extent Sgt. Frye and Sgt. Brown believed Tolliver to have given her implicit consent to their entry, the court observes that "for constitutional purposes nonresistance may not be equated with consent." United States v. Most, 876 F.2d 191, 199 (D.C. Cir. 1989)(refusing to accept government's argument that third party's failure to impede an officer's search of a defendant's bag raised an inference of "implied consent" to the search). Furthermore, it is clear that the troopers had ample opportunity to ask Tolliver for her permission to enter the home, and that they failed to do so. See United States v. Gray, 302 F. Supp. 2d 646, 650 n.2 (S.D. W. Va. 2004)(Goodwin, J.)(in granting motion to suppress, court considered both ambiguity inherent in

defendant's act of stepping backward when police moved to enter home, and also officers' failure to request permission to enter).

### III. Conclusion

The government has failed to prove by a preponderance of the evidence that Tolliver consented to the troopers' entry into her home. It was only after the troopers entered the front room of the house that they observed defendant and had reason to search his person, on which they discovered the evidence that provides the basis for the charges against him. Indeed, prior to entering the house, Sgt. Frye and Sgt. Brown apparently had no reason to believe defendant to be involved in any illicit drug activity; their sole purpose in going to the Tolliver residence was to question him with regard to an unrelated assault on a State trooper. Accordingly, the court hereby **GRANTS** defendant's motions to suppress (Doc. Nos. 25, 46) and **SUPPRESSES** all evidence discovered as a result of the troopers' entry into the Tolliver residence.

The Clerk is directed to mail a copy of this Memorandum Opinion and Order to all counsel of record and the Probation Office of this court.

It is **SO ORDERED** this 3rd day of May, 2007.

ENTER:

David A. Faber
Chief Judge